United States District Court
Southern District of Texas
**ENTERED**
January 25, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DARNELL JAMES TRAMBLE, SPN #02262138, | § § § |
| Plaintiff, | § § § |
| v. | § § § |
| HARRIS COUNTY JAIL MEDICAL, et al., | § § § § |
| Defendants. | § |

CIVIL ACTION NO. H-20-4380

### MEMORANDUM OPINION AND ORDER

The plaintiff, Darnell James Tramble (SPN #02262138; TDCJ #2366866; former TDCJ #2136473), has filed a Prisoner's Civil Rights Complaint under 42 U.S.C. § 1983 ("Complaint") (Docket Entry No. 1), alleging that he was denied adequate medical care while in custody at the Harris County Jail. He has provided additional details about his claims in a response to the court's Order for More Definite Statement ("Plaintiff's MDS")(Docket Entry No. 19). To further supplement the pleadings, the court asked Harris County to provide medical and administrative records with a report under Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1987) ("Martinez Report") (Docket Entry No. 22). In response, the court has received an Amicus Curiae Harris County Attorney's Office's Martinez Report and Motion for Summary Judgment on Behalf of the Harris County Jail Medical Staff (Docket Entry No. 26)

("Defendants' MSJ").  Tramble has filed a "Motion [for] Leave to Amend Furthermore Complaint" (Docket Entry No. 25), but he has not filed a response to Defendants' MSJ.  After considering all of the pleadings, the exhibits, and the applicable law, the court will grant Defendants' MSJ and will dismiss this action for the reasons explained below.

## I.  **Background**

Tramble was arrested on October 26, 2020, released the following day, and then booked into the Harris County Jail (the "Jail") on October 28, 2020.[1]  He was charged with manufacturing a controlled substance and possession of a controlled substance in Harris County Case Nos. 1631771 and 1695572.[2]  Public records reflect that Tramble was convicted pursuant to his guilty plea to charges of possessing methamphetamine in Case No. 1631771 on September 27, 2021, and sentenced to two years' imprisonment with credit for 340 days in custody.[3]  The charges against him in Case No. 1695572 were dismissed that same day upon Tramble's guilty plea

---

[1]Plaintiff's MDS, Docket Entry No. 19, p. 1.  For purposes of identification, all page numbers reference the pagination imprinted on each docket entry by the court's electronic case filing system, ECF.

[2]Plaintiff's MDS, Docket Entry No. 9, p. 1.

[3]See Harris County District Clerk's Office website, available at: https://www.hcdistrictclerk.com (last visited January 24, 2021).

in Case No. 1631771.[4]

While those criminal charges were pending against him, Tramble executed his Complaint on December 21, 2020, alleging that he was denied adequate care by "Medical Staff" at the Jail with deliberate indifference to his need for treatment.[5]  Tramble claims that he was given "[n]o treatment" for injuries he sustained in a car accident and that providers "neglect[ed]" to follow orders given by a specialist who examined him at a local hospital.[6]

Tramble explains that he sustained multiple fractures in his face and left leg during a car accident that occurred on March 31, 2020, before he was arrested.[7]  Shortly after the accident, Tramble had surgery at LBJ Hospital to stabilize his fractured left leg with rods and pins.[8]  Tramble reports that he was scheduled to have plastic surgery to repair his facial fractures at the end of September 2020.[9]  Medical records clarify that the specialist who treated him scheduled a "septorhinoplasty" to repair a "severe nasal bone fracture with septal and nasal bone deviation" that

---

[4]See id.

[5]Complaint, Docket Entry No. 1, pp. 2, 4, 11.

[6]Id. at 5.

[7]Plaintiff's MDS, Docket Entry No. 19, pp. 2-3.

[8]Id. at 4-5.

[9]Id. at 3.

affected Tramble ability to breathe through his nose.[10] According
to Tramble, that appointment was postponed due to the COVID-19
pandemic.[11]

When Tramble was booked into the Jail on October 28, 2020, a
nurse scheduled an appointment for him to return to LBJ Hospital to
see a specialist on November 13, 2020.[12]  Tramble contends that the
specialist who examined him at LBJ Hospital took X-rays to
determine his need for surgery to correct his facial fractures.[13]
According to Tramble, the specialist declined to do the procedure
while he remained in Jail, stating that it "would only be safe to
[perform] if [Tramble] was released from custody."[14]

Tramble, who reportedly had trouble breathing and sleeping
because of the injuries to his nose, contends that he was denied
the surgery he needed.[15]  He claims that medical personnel at the
Jail failed to follow advice from the specialist at LBJ Hospital,
who recommended that Tramble be released so that he could have the

---

[10]Assessment and Plan dated December 22, 2020, Docket Entry No.
26-6, p. 21 (summarizing diagnoses and plans of care by specialists
at LBJ Hospital in the Ear, Nose, and Throat Department).

[11]Plaintiff's MDS. Docket Entry No. 19, p. 5.

[12]Complaint, Docket Entry No. 1, p. 13.

[13]Plaintiff's MDS, Docket Entry No. 19, p. 5.

[14]Id.

[15]Id. at 2, 6.

-4-

surgery.[16]   Tramble claims that he was also denied medication recommended by the specialist in the form of "[Flonase] nasal spray" to keep his nasal passages clear so that his surgery would be "easier to perform."[17]   Instead, he was given "off brand nasal spray which made [his] nose burn."[18]

In addition, Tramble notes that a nurse gave him medication for pain (Tramadol) and for high blood pressure (Norvasc) when he was booked into the Jail.[19]   He claims that his prescription for Tramadol was discontinued after two days and that providers refused his requests for more pain medication.[20]

Tramble contends that his blood pressure was elevated because of his pain.[21]   Tramble alleges that he was given improper medication to treat his hypertension when a female physician "forced" him to take Clonidine to lower his blood pressure on December 1, 2020, which made him ill.[22]   Tramble alleges that the decision to treat him with Clonidine was overruled by another physician on December 17, 2020, following an "intense argument"

---

[16]Id. at 6.

[17]Id. at 6, 7.

[18]Id. at 6.

[19]Complaint, Docket Entry No. 1, p. 13.

[20]Id.

[21]Plaintiff's MDS, Docket Entry No. 19, pp. 3-4.

[22]Complaint, Docket Entry No. 1, p. 14.

about whether the medication could be harmful.[23]  Tramble contends that he suffered a "severe headache for hours" and that his vision was also affected as the result of taking Clonidine.[24]

Pointing to his injured left leg, Tramble also claims that he is unable to walk long or short distances without assistance.[25] Tramble alleges that he asked a doctor for a cane, noting that his leg was swollen from walking to the medical department, but his request was denied.[26]

Invoking 42 U.S.C. § 1983, Tramble seeks unspecified compensatory damages for the violation of his constitutional rights.[27] Tramble has named the Harris County Jail Medical Staff as the primary defendant.[28]  He also sues the Harris County Sheriff's Department and a physician whose work identification number is #1782216776007070.[29]  In addition, he appears to claim that Harris County Sheriff Ed Gonzalez is liable in his role as a supervisory

---

[23]Id.

[24]Plaintiff's MDS, Docket Entry No. 19, p. 9.

[25]Id. at 2.

[26]Id. at 7.

[27]Complaint, Docket Entry No. 1, p. 5.

[28]Id. at 1, 2.

[29]Id. at 2-3.

-6-

official at the Jail.[30]

The Harris County Attorney's Office has filed Defendants' MSJ on behalf of medical personnel at the Jail, detailing the care that Tramble received while in custody.[31]  In support, they have provided an affidavit from Dr. Leonard Nagorski ("Dr. Nagorski"),[32] as well as medical records of treatment provided at the Jail,[33] and at LBJ Hospital,[34] which refute Tramble's claim that he was provided with no treatment.  Tramble's claims concerning the adequacy of the medical care that he received are addressed below under the applicable standard of review.

## II.  **Standard of Review**

### A.  **The Prison Litigation Reform Act**

Because Tramble filed this case while incarcerated, the court is required by the Prison Litigation Reform Act (the "PLRA") to scrutinize the claims and dismiss the Complaint, in whole or in part, if it determines that the action is (1) "frivolous or

---

[30]_Id._ at 2, 12.

[31]Defendants' MSJ, Docket Entry No. 26, pp. 1-21.

[32]Affidavit of Dr. Leonard Nagorski ("Dr. Nagorski's Affidavit"), Docket Entry No. 26-1, pp. 1-19.

[33]Harris County Sheriff's Office ("HCSO") Health Services Progress Notes, Docket Entry No. 26-4, pp. 1-182; HCSO Health Services Medications Report, Docket Entry No. 26-5, pp. 1-18.

[34]Medical Records from Harris Health System, LBJ General Hospital ("LBJ Hospital"), Docket Entry No. 26-6, pp. 1-29.

-7-

malicious," (2) "fails to state a claim on which relief may be granted" or (3) "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).  In cases governed by the PLRA a court "shall on its own motion or on the motion of a party dismiss an action" filed by a prisoner if any of these grounds apply.  See 42 U.S.C. § 1997e(c).

The Fifth Circuit has adopted the use of a <u>Martinez</u> Report as a tool to assist the court in making a determination of frivolity under 28 U.S.C. § 1915(e).  See <u>Norton v. Dimazana</u>, 122 F.3d 286, 292-93 (5th Cir. 1997); <u>Johnson v. Seckler</u>, 250 F. App'x 648, 649 n.1 (5th Cir. 2007).  "A district court may dismiss as frivolous the complaint of a prisoner proceeding IFP if it lacks an arguable basis in law or fact."  <u>Geiger v. Jowers</u>, 404 F.3d 371, 373 (5th Cir. 2005).  "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist."  <u>Siglar v. Hightower</u>, 112 F.3d 191, 193 (5th Cir. 1997).

## B.   Motions for Summary Judgment

As noted above, the Harris County Attorney's Office has moved for summary judgment on behalf of medical providers at the Jail, arguing that Tramble's claims fail as a matter of law.[35]  Motions

---

[35]Defendants' MSJ, Docket Entry No. 26, pp. 1-21.

for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Under this rule a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986) (quoting and discussing former Rule 56(c)). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. Id.

In deciding a summary judgment motion the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010) (internal quotation marks and citation omitted). However, the non-movant cannot avoid summary judgment simply by presenting "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." Jones v. Lowndes County, Mississippi, 678 F.3d 344, 348 (5th Cir. 2012) (quoting TIG Insurance Co. v. Sedgwick James of Washington, 276 F.3d 754, 759 (5th Cir. 2002)); see also Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a non-movant cannot demonstrate a genuine issue of

-9-

material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence).  If the movant demonstrates an "absence of evidentiary support in the record for the nonmovant's case," the burden shifts to the nonmovant to "come forward with specific facts showing that there is a genuine issue for trial." Sanchez v. Young County, Texas, 866 F.3d 274, 279 (5th Cir. 2017) (per curiam) (citing Cuadra v. Houston Independent School Dist., 626 F.3d 808, 812 (5th Cir. 2010)); see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

The plaintiff proceeds pro se in this case.  Courts construe pleadings filed by pro se litigants under a less stringent standard than those drafted by lawyers.  See Haines v. Kerner, 92 S. Ct. 594, 596 (1972) (per curiam); see also Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) ("A document filed pro se is 'to be liberally construed[.]'") (quoting Estelle v. Gamble, 97 S. Ct. 285, 292 (1976)).  Nevertheless, "pro se parties must still brief the issues and reasonably comply with [federal procedural rules]." Grant v. Cuellar, 59 F.3d 523, 524 (5th Cir. 1995) (citations omitted).  The traditional standard of leniency toward pro se pleadings does not excuse a pro se plaintiff from the "burden of opposing summary judgment through the use of competent summary judgment evidence." Malcolm v. Vicksburg Warren School District Board of Trustees, 709 F. App'x 243, 246 (5th Cir. 2017) (per

-10-

curiam) (citing <u>Davis v. Fernandez</u>, 798 F.3d 290, 293 (5th Cir. 2015) ("Of course, this is not to say that <u>pro se</u> plaintiffs don't have to submit competent evidence to avoid summary judgment, because they do.")).

### III.  <u>Discussion</u>

#### A.  **Lack of Capacity**

The court notes that Tramble has listed the Harris County Sheriff's Department as a defendant and he also appears to sue the Harris County Jail Medical Department, where health care personnel allegedly denied him adequate medical care.[36]  Neither the Harris County Sheriff's Department nor the Harris County Jail Medical Department, however, have the capacity to be sued as required by Fed. R. Civ. P. 17(b). <u>See Aguirre v. Harris County Sheriff's Office</u>, Civil No. H-11-3440, 2012 WL 6020545, at *2 (S.D. Tex. Nov. 30, 2012); <u>Lane v. Harris County Jail Medical Dep't</u>, Civil No. H-06-0875, 2006 WL 2868944, at *7 (S.D. Tex. Oct. 5, 2006); <u>see also</u> <u>Potts v. Crosby Ind. Sch. Dist.</u>, 210 F. App'x 342, 344-45 (5th Cir. 2006) (per curiam) (upholding dismissal of claims against the Harris County Sheriff's Department on the grounds that, as a "<u>non sui juris</u> division of Harris County," it lacked the capacity to be sued) (citing <u>Darby v Pasadena Police Dep't</u>, 939 F.2d 311, 313 (5th Cir. 1991)).  Because these entities lack the requisite legal

---

[36]Complaint, Docket Entry No. 1, p. 2.

capacity, Tramble's claims against them are dismissed under 28 U.S.C. § 1915(e)(2)(B).

**B.   Claims Against Sheriff Gonzalez**

Tramble mentions Harris County Sheriff Ed Gonzalez in his pleadings, but he does not allege facts showing that Sheriff Gonzalez had any personal involvement with his medical care or that care was denied as the result of a deficient policy in place at the Jail.[37]  Under these circumstances, Tramble fails to state a claim against Sheriff Gonzalez for his role as a supervisory official.[38] See Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987); Cozzo v. Tangipahoa Parish Council-President Gov't, 279 F.3d 273, 289 (5th Cir. 2002) (quotation marks and citation omitted).  Therefore, Tramble's claims against Sheriff Gonzalez are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

**C.   Claims of Inadequate Medical Care**

Tramble contends that medical providers at the Jail failed to provide care recommended by specialists at LBJ Hospital by denying

---

[37]Complaint, Docket Entry No. 1, pp. 2, 12; Plaintiff's MDS, Docket Entry No. 19, pp. 9-10.

[38]Absent a "direct causal link" between a municipal policy and the alleged constitutional deprivation, Tramble also fails to state a claim against Harris County.  See James v. Harris County, 577 F.3d 612, 617 (5th Cir. 2009)(citations omitted).

him surgery and Flonase nasal spray.[39]  He contends further that he
was denied adequate pain medication,[40] and that a female physician
improperly   prescribed   medication   for   high   blood   pressure
(Clonidine), which caused him to suffer severe headaches and other
side effects.[41]  Tramble also contends that he was denied a cane to
help him walk.[42]  The Harris County Attorney's Office contends that
Tramble does not demonstrate a constitutional violation, pointing
to the affidavit from Dr. Nagorski,[43] which is supported by medical
records.[44]  Tramble's claims are discussed separately below under
the legal standard that governs pretrial detainees.

     "[P]retrial detainees have a constitutional right, under the
Due Process Clause of the Fourteenth Amendment, not to have their
serious medical needs met with deliberate indifference on the part
of the confining officials." Thompson v. Upshur County, Texas, 245
F.3d 447, 457 (5th Cir. 2001); see also Hare v. City of Corinth,
Mississippi, 74 F.3d 633, 639 (5th Cir. 1996) (en banc).  "The

---

[39]Plaintiff's MDS, Docket Entry No. 19, pp. 5-6.

[40]Complaint, Docket Entry No. 1, p. 13; Plaintiff's MDS, Docket
Entry No. 19, p. 8.

[41]Plaintiff's MDS, Docket Entry No. 19, p. 9.

[42]Id. at 7.

[43]Dr. Nagorski's Affidavit, Docket Entry No. 26-1, pp. 1-19.

[44]HCSO Health Services Progress Notes, Docket Entry No. 26-4,
pp. 1-182; HCSO Health Services Medications Report, Docket Entry
No. 26-5, pp. 1-18; Medical Records from LBJ, Docket Entry No. 26-
6, pp. 1-29.

standard [for pretrial detainees] is the same as that for a prisoner under the Eighth Amendment." Cadena v. El Paso County, 946 F.3d 717, 727 (5th Cir. 2020) (citations omitted). To establish an actionable claim for the denial of adequate medical care under the Eighth Amendment, a prisoner must demonstrate that prison officials acted with "deliberate indifference to a prisoner's serious illness or injury[.]" Estelle v. Gamble, 97 S. Ct. 285, 291 (1976). A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 114 S. Ct. 1970, 1984 (1994).

The Eighth Amendment deliberate indifference standard is an "extremely high" one to meet. Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exigent circumstances." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). A showing of deliberate indifference under these circumstances requires the prisoner to demonstrate that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any

-14-

serious medical needs." Id. (citation and internal quotation marks
omitted). Moreover, "medical records of sick calls, examinations,
diagnosis, and medications may rebut an inmate's allegations of
deliberate indifference." Banuelos v. McFarland, 41 F.3d 232, 235
(5th Cir. 1995).

### 1.   Denial of Surgery

Tramble's primary claim is that he was denied surgery to
repair his nasal fractures because the specialist who treated him
at LBJ Hospital declined to perform the procedure unless Tramble
was released from custody.[45]   Tramble alleges that the specialist
recommended that he be released so he could have the surgery, but
that Jail medical personnel failed to comply with the specialist's
recommendation.[46]

Dr. Nagorski notes that Tramble suffered "multiple facial
fractures and a fracture of his left tibia" in a motor vehicle
accident that occurred in late March 2020.[47]   Although Tramble's
fractured left tibia was repaired shortly thereafter at LBJ
Hospital, the facial fractures were not repaired immediately
because of "severe soft tissue swelling" of Tramble's face from the

---

[45]Plaintiff's MDS, Docket Entry No. 19, pp. 5-6.

[46]Id. at 6.

[47]Dr. Nagorski's Affidavit, Docket Entry No. 26-1, p. 4.

accident.[48] Tramble returned to LBJ Hospital on April 28, 2020, where he was seen in the Ear, Nose, and Throat ("ENT") Department.[49] He was scheduled for "ENT Surgery" at the end of September 2020, but before he was arrested the procedure was rescheduled because the COVID-19 pandemic "shut down all elective surgeries at most hospitals, including LBJ [H]ospital."[50]

Dr. Nagorski confirms that the specialist who saw Tramble at LBJ Hospital shortly after he was booked into the Jail decided to delay surgery to correct Tramble's nasal fractures until he was released.[51]   Dr. Nagorski explains that extensive surgery was required to repair Tramble's nasal fractures and that any further trauma Tramble might experience in the event that he was involved in a fight with another inmate at the Jail would make it extremely difficult to provide additional surgical repairs.[52]  The specialist determined that the surgery was elective and could be delayed until Tramble was released from custody.[53]   In Dr. Nagorski's opinion, there was no medical reason for Tramble's early release from Jail and that the specialist's determination that the elective surgery

---

[48] Id.

[49] Id.

[50] Id.

[51] Id. at 11.

[52] Id.

[53] Id.

could wait until Tramble was released was based on sound medical judgment.[54]

The Supreme Court has recognized that whether a particular form of treatment is indicated "is a classic example of a matter for medical judgment." Estelle, 97 S. Ct. at 293. The medical records reflect that Tramble was examined in the ENT Clinic at the LBJ Hospital on three occasions after he was booked into the Jail: November 13, 2020,[55] November 24, 2020,[56] and December 22, 2020.[57] There is no record showing that a specialist recommended releasing Tramble and there is no indication that surgery could not wait until Tramble was no longer in custody.[58]   Because this determination was made by specialists at LBJ Hospital, Tramble does

---

[54]Id.

[55]After Visit Summary for appointment with Dr. Douglas J. Stanley at the LBJ Hospital on November 13, 2020, Docket Entry No. 26-6, pp. 2-7.

[56]After Visit Summary for appointment with Dr. Wee Tin K Kao at the LBJ Hospital on November 24, 2020, Docket Entry No. 26-6, pp. 18-20.

[57]Assessment and Plan dated December 22, 2020, Docket Entry No. 26-6, pp. 21-23; After Visit Summary for appointment with Dr. Wee Tin K Kao at the LBJ Hospital on December 22, 2020, Docket Entry No. 26-6, pp. 24-27.

[58]Court records reflect that Tramble is no longer confined in the Jail and that he is now out of custody after serving a brief amount of time in state prison.  See Change of Address, Docket Entry No. 28, p. 1 (reflecting that Tramble was incarcerated at the Garza West Unit of the Texas Department of Criminal Justice); Change of Address, Docket Entry No. 29, p. 1 (reflecting that Tramble was released from TDCJ and now resides with family).

not establish that he was denied surgery as a result of any decision made by a medical provider at the Jail.  To the extent that Tramble disagrees with the determination that his surgery could wait, it is well established that a prisoner's disagreement with a physician's assessment is insufficient to establish deliberate indifference.  See Gobert, 463 F.3d at 346; see also Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991).  Because Tramble does not show that surgery was delayed in violation of his constitutional rights, the defendants are entitled to summary judgment on this claim.

### 2.    Denial of Flonase Nasal Spray

Tramble complains that Jail medical providers failed to provide him with Flonase nasal spray to alleviate nasal congestion as prescribed by specialists who treated him at LBJ Hospital.[59] Tramble objects that Jail medical providers provided him with a different brand of nasal spray instead.[60]

Medical records reflect that specialists who treated Tramble at the LBJ Hospital issued prescriptions for "fluticasone propionate," otherwise known as Flonase nasal spray, on November

---

[59]Plaintiff's MDS, Docket Entry No. 19, pp. 6, 7.

[60]Id. at 6.

13, 2020,[61] and November 24, 2020.[62]  Dr. Nagorski notes that the specialists did not recommend that Tramble only receive Flonase.[63] Medical records reflect that medical personnel at the Jail gave Tramble another steroid nasal spray called Azelastine, which was discontinued on December 24, 2020.[64]  He was also given a different steroid nasal spray called Nasacort to treat nasal swelling.[65]

The medical records confirm that Tramble was prescribed two different brands of nasal spray by medical providers at the Jail.[66] As noted above, decisions about treatment involve matters of medical judgment.  See Estelle, 97 S. Ct. at 293 (observing that whether a particular form of treatment is indicated "is a classic example of a matter for medical judgment" and that a medical decision "does not represent cruel and unusual punishment"). Tramble does not demonstrate that medical providers refused to treat him or intentionally treated him incorrectly.  His disagreement with medical decisions about which brand of nasal

---

[61]Prescription for Flonase nasal spray from Dr. Douglas J. Stanley, [LBJ] General Hospital ENT Clinic, Docket Entry No. 26-6, p. 1.

[62]Prescription for Flonase nasal spray from Dr. Wee Tin Kao, [LBJ] General Hospital ENT Clinic, Docket Entry No. 26-6, p. 16.

[63]Dr. Nagorski's Affidavit, Docket Entry No. 26-1, p. 16.

[64]Id.

[65]Id.

[66]HCSO Health Services Medications Report, Docket Entry No. 26-5, p. 15.

spray to prescribe does not demonstrate deliberate indifference.
See Gobert, 463 F.3d at 346.  Even if a lapse in professional
judgment occurred, any such failure would amount to no more than
mere negligence or malpractice, and not a constitutional violation.
See Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999) (citing
Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993)).  Tramble
does not demonstrate that medical providers at the Jail violated
his constitutional rights by prescribing a different nasal spray
than the brand recommended by specialists at the LBJ Hospital.
Therefore, the defendants are entitled to summary judgment on this
claim.

### 3.    Denial of Adequate Pain Medication

Tramble contends that he was prescribed Tramadol for pain when
he arrived at the Jail, but that he was denied adequate medication
for pain after this prescription was discontinued two days later.[67]
Medical records provided by the Harris County Attorney's Office
refute this claim.

Dr. Nagorski notes that when Tramble was admitted to the Jail
on October 28, 2020, he reported having hypertension and pain in
his face, left leg, and right-knee.[68]  Tramble stated that he was
taking the following medications at the time of his incarceration:

---

[67]Complaint, Docket Entry No. 1, p. 13.

[68]Id. at 5.

A. Amlodipine 10 mg a day for high blood pressure.

B. Hydrochlorothiazide 25 mg a day for high blood pressure.

C. Tylenol #3 for facial and leg pain and Tramadol for pain.

D. Gabapentin for anxiety.[69]

Dr. Nagorski notes that Tylenol #3 and Tramadol are both classified as an Opioid or narcotic medication.[70] He notes further that Gabapentin is "commonly abused" by patients who are taking Opioids such as Tylenol #3 and Tramadol because Gabapentin increases the euphoria produced by these narcotic medications.[71]

When Tramble was booked into the Jail he was started on Tramadol, 50 mg twice a day, for facial and leg pain.[72] The prescription for Tramadol was discontinued one month later on November 29, 2020.[73] Dr. Nagorski explains that Tramble reported having "chronic" pain, which is defined as "pain that persists beyond three to six months after the acute injury."[74] Due to the high number of patients who become addicted to Opioids, Dr. Nagorski notes that "in 2018, the Texas Legislature and the Texas

---

[69] Id.

[70] Id.

[71] Id.

[72] Id. at 6.

[73] Id.

[74] Id.

Medical Board amended the Texas State Medical lass to allow only acute treatment of pain with Opioids."[75]  As a result, Opioids may not be given beyond a period of seven days as pain treatment for "acute or chronic pain without a good medical reason."[76]  According to Dr. Nagorski, medical providers at the Jail discontinued Tramble's prescription for Tramadol after thirty days and placed him on "appropriate substitute pain medications," including Tylenol and Naproxen, after noting that he had used narcotics previously in 2017, which raised a concern that he may be addicted.[77]  In Dr. Nagorski's opinion, discontinuing the prescription was proper because it was "medically inappropriate to continue [Tramble] on long term Tramadol use."[78]  He notes that the specialist who examined Tramble on three occasions at the LBJ Hospital did not recommend an Opioid medication, stating that Tylenol was adequate for pain.[79]

Medical records confirm that Tramble was prescribed Tramadol for pain when he arrived at the Jail on October 28, 2020, and that

---

[75]_Id._

[76]_Id._ at 6-7.

[77]_Id._ at 7.

[78]_Id._ at 7.

[79]Id. at 11.

the prescription was discontinued one month later.[80]   Although
Tramble disagrees with the decision to switch him from Tramadol to
non-narcotic pain medication, the decision is consistent with
records from specialists who treated him at LBJ Hospital on
November 13, 2020,[81] November 24, 2020,[82] and December 22, 2020,[83]
who determined that Tylenol was adequate to treat his pain.
Tramble's disagreement with the medical decision to discontinue his
prescription for Tramadol in favor of non-narcotic pain medication
as a substitute does not establish a constitutional deprivation or
show deliberate indifference.   See Gobert, 463 F.3d at 346.
Because Tramble does not demonstrate that medical providers at the
Jail violated his constitutional rights by discontinuing his
prescription for Tramadol, the defendants are entitled to summary
judgment on this claim.

---

[80]HCSO Health Services Medications Report, Docket Entry No. 26-5, pp. 13, 14.

[81]After Visit Summary for appointment with Dr. Douglas J. Stanley at the LBJ Hospital on November 13, 2020, Docket Entry No. 26-6, p. 3 (authorizing acetaminophen, commonly known as Tylenol, two tablets every six hours for pain)

[82]After Visit Summary for appointment with Dr. Wee Tin K Kao at the LBJ Hospital on November 24, 2020, Docket Entry No. 26-6, p. 19 (authorizing acetaminophen, two tablets every six hours for pain).

[83]After Visit Summary for appointment with Dr. Wee Tin K Kao at the LBJ Hospital on December 22, 2020, Docket Entry No. 26-6, p. 26 (authorizing acetaminophen, two tablets every six hours for pain).

### 4. Medication for High Blood Pressure

Tramble contends that he received inadequate treatment when a female physician at the Jail prescribed Clonidine to lower his blood pressure,[84] which was elevated because he was in pain.[85] Tramble contends that the prescription for Clonodine caused him to suffer severe headaches.[86] He appears to claim that the medication was prescribed in error and that he was harmed as a result.[87]

Dr. Nagorski explains that Tramble was severely hypertensive at the time he was booked into the Jail, which suggests that he "most likely was not taking his [b]lood [p]ressure medications (Hydrochlorothiazide and Amlodipine) at home."[88] Medical records reflect that Tramble was prescribed medication for high blood pressure at the Jail, but that he frequently failed to comply by missing doses and by refusing appointments for blood pressure monitoring and laboratory tests related to his hypertension.[89] He was treated for high blood pressure at LBJ Hospital on November 24,

---

[84]Complaint, Docket Entry No. 1, p. 14.

[85]Plaintiff's MDS, Docket Entry No. 19, pp. 3-4.

[86]Id. at 9.

[87]Complaint, Docket Entry No. 1, p. 14; Plaintiff's MDS, Docket Entry No. 19, p. 9.

[88]Dr. Nagorski's Affidavit, Docket Entry No. 26-1, p. 8.

[89]HCSO Health Services Progress Notes, Docket Entry No. 26-4, pp. 1-46, 78-80, 88-90, 103-04, 111, 121-23 (documenting non-compliance with prescribed medication and refusal of services for hypertension).

2020, where his blood pressure was noted to be 164/119.[90]

Dr. Nagorski explains that Clonidine is primarily used "in acute treatment of severe hypertension to lower the blood pressure to more appropriate levels."[91] Dr. Nagorski notes that Clonidine was administered to Tramble on multiple occasions during episodes of severe hypertension to prevent him from having "a stroke, heart attack (myocardial infarction) and sudden death."[92] While headaches are a known side effect of Clonidine, all medications that acutely lower blood pressure have side effects and in Dr. Nagorski's opinion the alternative (i.e., death or severe disability) is much worse.[93] Dr. Nagorski notes further that the headaches and other side effects that Tramble attributes to Clonidine could also have been symptoms of his poorly controlled high blood pressure.[94]

Medical records reflect that Tramble was prescribed Clonidine for severe hypertension on October 30, 2020, which was administered in the clinic with instructions to recheck his blood pressure 30

---

[90]After Visit Summary for appointment with Dr. Jonathan G. Rogg at the LBJ Hospital, on November 24, 2020, Docket Entry No. 26-6, pp. 8-15.

[91]Dr. Nagorski's Affidavit, Docket Entry No. 26-1, p. 8.

[92]Id.

[93]Id.

[94]Id. at 14.

minutes later to see if it had gone down.[95] Tramble was also given
Clonidine for severe hypertension again November 29, 2020,[96] and
December 2, 2020.[97]   Thereafter, Tramble refused blood pressure
checks and laboratory tests.[98]  Clonidine was recommended again on
December 17, 2020, following an EKG.[99]   The medication was
discontinued later that same day after Tramble's blood pressure
went down.[100]   According to Dr. Nagorski, providers followed the
correct medical protocol in treating Tramble with Clonidine to
reduce his blood pressure.[101]

The decision to prescribe Clonidine to treat Tramble's
elevated blood pressure involves matters of medical judgment that
do not constitute cruel and unusual punishment. See Estelle, 97 S.
Ct. at 293.   Tramble has not alleged any facts showing that any
provider at the Jail intentionally recommended erroneous treatment
or deliberately prescribed medication knowing that Tramble would

---

[95]HCSO Health Services Progress Notes, Docket Entry Nos. 26-4,
pp. 128-30.

[96]Id. at 105-06

[97]Id. at 98-99, 101.

[98]Id. at 78-80, 88-90.

[99]Id. at 66-67; HCSO Health Services Medications Report, Docket
Entry No. 26-5, p. 16.

[100]HCSO Health Services Progress Notes, Docket Entry No. 26-4,
p. 69.

[101]Dr. Nagorski's Affidavit, Docket Entry No. 26-1, p. 13.

experience severe headaches as a result.   Even if Clonidine was prescribed in error, and the record contains no evidence that it was, mistakes in judgment constitute, at most, negligence, which is not actionable under 42 U.S.C. § 1983. See Simon v. LeBlanc, 623 F. App'x 276, 277 (5th Cir. 2015) (per curiam) (citing Varnado, 920 F.2d at 321). Absent a showing that Tramble was treated with deliberate indifference, the defendants are entitled to summary judgment on this issue.

### 5.   Denial of a Cane

Tramble alleges that he had difficulty walking and required a cane for assistance.[102]  Tramble alleges that he asked a doctor for a cane, but his request was denied.[103]

 Medical records show that when Tramble was booked into the Jail on October 28, 2020, the nurse who did his initial health assessment noted that he would benefit from a cane for ambulation, a bottom bunk, and a wheel chair.[104]  A copy of the assessment was given to the Jail Watch Commander, and it appears that he was given access to a wheel chair for long distances of more than 50 feet,

---

[102]Plaintiff's MDS, Docket Entry No. 19, p. 2.

[103]Id. at 7.

[104]HCSO Health Services Progress Notes, Docket Entry No. 26-4, p. 142.

but that he was not immediately given a cane.[105]  Eventually, on December 18, 2020, Tramble was given a cane and a "special needs" pass.[106]

The Fifth Circuit has emphasized that allegations of delay in medical care only violate the Constitution "if there has been deliberate indifference that *results in substantial harm*." Rogers v. Boatright, 709 F.3d 403, 410 (5th Cir. 2013) (emphasis in original) (quoting Easter v. Powell, 467 F.3d 459, 464 (5th Cir. 2006)); see also Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).  Tramble has not responded to the motion for summary judgment or refuted the evidence provided by the Harris County Attorney's Office, which demonstrates that he received medical care on numerous occasions while at the Jail and was not denied treatment.  The medical records reflect that Tramble was able to attend many medical appointments at the Jail clinic without needing a cane.  During one of these appointments on November 29, 2020, a provider noted that Tramble ambulated back to his cell with a steady gait.[107]  To the extent that there was delay in receiving a cane to help him ambulate, Tramble does not allege facts showing that his condition worsened or that he suffered substantial harm as

---

[105]Id. at 142, 147.

[106]HCSO Health Services Progress Notes, Docket Entry No. 26-4, p. 153.

[107]HCSO Health Services Progress Notes, Docket Entry No. 26-4, p. 111.

the result of any delay.  As a result, his allegations are not
sufficient to establish a constitutional violation.  See Rogers,
709 F.3d at 410; Mendoza, 989 F.2d at 193.  Because Tramble has not
demonstrated a constitutional violation, the defendants are
entitled to summary judgment in their favor.

**D.   Tramble's Motion for Leave to Amend**

Tramble has filed a motion seeking leave to amend or
supplement his Complaint, which will be denied.[108]  On December 31,
2020, the court issued an Order, which contained detailed
instructions about the procedures applicable to this case.[109]
Tramble was advised that a "complete amended complaint" must be
attached to any request for leave to amend.[110]  Tramble was reminded
of this requirement in two subsequent Orders.[111]  Tramble has not
provided a proposed amended complaint as instructed.

More importantly, the allegations raised in Tramble's motion
do not state a claim upon which relief may be granted.  Tramble
appears to allege that medical providers at the Jail agitated him
by "constantly" checking his vital signs and by improperly

---

[108]Motion for Leave to Amend Furthermore Complaint, Docket
Entry No. 25, pp. 1-7.

[109]Order Granting Motion to Proceed In Forma Pauperis, Docket
Entry No. 5, pp. 1-6.

[110]Id. at 3, ¶ 7.

[111]Order, Docket Entry No. 16, pp. 3-4; Order, Docket Entry No.
21, pp. 1-2.

scheduling him for laboratory tests that were unnecessary.[112] Tramble repeats his claim that Jail officials wrongfully refused to release him with deliberate indifference to his need for surgery to repair his fractured nose.[113]   Tramble also repeats his claim that Sheriff Gonzalez is responsible for the inadequate care that he has received from medical personnel at the Jail.[114]   These allegations, which are based on Tramble's disagreement with treatment decisions, do not establish deliberate indifference on the part of medical providers or a claim for supervisory liability against Sheriff Gonzalez for reasons discussed in more detail above.   Because allowing an amendment would be futile, Tramble's request for leave to amend is denied and this action will be dismissed with prejudice.

### IV.   Conclusion and Order

Accordingly, the court **ORDERS** as follows:

1.   The Motion for Leave to Amend Furthermore Complaint filed by Darnell James Tramble (Docket Entry No. 25) is **DENIED**.

2.   The Amicus Curiae Harris County Attorney's Office's <u>Martinez</u> Report and Motion for Summary Judgment on Behalf of the Harris County Jail Medical Staff (Docket Entry No. 26) is **GRANTED**, and this action will be dismissed with prejudice.

---

[112]Motion for Leave to Amend, Docket Entry No. 25, p. 2.

[113]<u>Id.</u> at 3-4.

[114]<u>Id.</u> at 4-5.

3.    A separate final judgment will issue.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this the 25th day of January, 2022.

_____
                     SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE